Argued October 6, reversed October 25, rehearing denied November 29, 1927.

## VERA S. FRICKEY v. FRANK FRICKEY.

(260 Pac. 218.)

**Divorce—Husband Held not so Free from Fault as to Justify Divorce on Ground of Cruel and Inhuman Treatment.**

In action by wife for divorce on ground of cruel and inhuman treatment, in which husband filed counterclaim for divorce on same grounds, evidence *held* not to show husband so nearly free from fault as to justify court's granting him divorce on ground of cruel and inhuman treatment.

---

Divorce, 19 **C. J.,** p. 93, n. 78, p. 94, n. 80, p. 142, n. 52, p. 197, n. 69.

From Clatsop: J. A. EAKIN, Judge.

Department 1.

Plaintiff sued the defendant for a divorce on the ground of cruel and inhuman treatment. Defendant denied the allegations of cruel and inhuman treatment and counterclaimed charging plaintiff with cruel and inhuman treatment and praying for a divorce. The reply joined issue with the counterclaim. The parties have been married twice. The second marriage occurred on August 14, 1922. Plaintiff secured a divorce from defendant in Marion County on the twenty-first day of February, 1919. The decree appealed from awards to defendant a divorce and one third of the real property owned by plaintiff. Three children are the fruits of the first marriage. Their names are and their ages were at the time of the trial: Emily, 12; Franklin, 10, and Adam, 6. The care, control and custody of the children were given to both plaintiff and defendant and the decree then provides:

"However, it is for the best interests of said minor children that the court divide their time between plaintiff and defendant as equally as possible without interfering with their school work, and for that reason it is decreed that the care, custody and control of said minor children be and the same hereby is awarded to their mother Vera S. Frickey, the plaintiff, herein, until further order of this court, save and except, however, that it is hereby decreed that the defendant Frank Frickey shall have the privilege of having said children on week-ends, * * and during defendant's vacation he shall be permitted to have them with him during said period."

Defendant is required by the decree to pay $50 per month for the support and maintenance of said children. Plaintiff appeals.

REVERSED. REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. O. B. Setters.*

For respondent there was a brief over the name of *Messrs. Green & Wold,* with an oral argument by *Mr. G. L. Green.*

COSHOW, J.—We believe that plaintiff failed to adduce sufficient evidence to justify a decree in her favor. We also believe from a careful reading and consideration of the testimony that defendant has established sufficient grounds for a divorce if he himself had been free from blame and fault. The evidence discloses that plaintiff is of a nervous temperament and part of the time was in poor health. She had a nervous breakdown and on or about the third day of November, 1924, was charged by her husband with insanity. She was adjudged insane at an examination on said date and admitted to the hospital for the insane at Salem November 4, 1924. She was paroled on November 10th and discharged on November 20th of the same year. Plaintiff during that time was laboring under some delusions and hallucinations but after a few days' rest improved enough to be paroled to her mother who had come from Pasadena, California, upon plaintiff's solicitation. While plaintiff's conduct in two or three instances was cruel and in one or two instances of such a nature as to greatly humiliate the defendant, the conduct of defendant was also calculated to irritate and provoke plaintiff.

At a time when plaintiff was in need of special attention and entitled to particular consideration from defendant he seemed to be very indifferent of her feelings and to unnecessarily irritate her. The two or three times that plaintiff committed acts of a cruel or inhuman nature she was aggravated to do so by the conduct of defendant. One instance complained of particularly by the defendant was the conduct of plaintiff in bringing to the church where he was singing in a choir some of his clothing and dropping it on the floor in or near the vestibule and telling a boy standing there to tell defendant not to return home. This act was induced by defendant's gross neglect. He had left home Sunday morning to go to church. According to his own testimony as soon as church was over he caught a bus leading to a park where two games of baseball were to be played. He returned directly from the ball games and went to church without so much as letting his wife know where he was during the entire day. His only explanation for not letting her know his whereabouts is that he could not communicate with her because he caught a bus which "happened to be going to the ball games." He offered no reason for not phoning to his wife when he returned from the ball games. Considering the nervous condition of plaintiff we believe that she was entitled to special attention and care from defendant instead of such manifest indifference.

The night plaintiff was in jail in Astoria awaiting the arrival of an attendant from the hospital at Salem defendant displayed an utter indifference not only to plaintiff's comfort but also to the care of his children. Mrs. Anna M. Dresser, a witness for the defendant, testified in that regard as follows:

"Mr. Frickey came over to ask me about getting a woman and he sat and talked until ten o'clock or after. He wanted to get a woman to take care of his children. I said, 'Frank, did anybody take her night-robe and brush and comb to her?' and he called up and asked the Sheriff. The Sheriff asked Mrs. Frickey and she said she would be glad to have them. Marshall and Frank took them down to the jail, and then Frank was very nervous and Marshall asked him to have a cup of coffee with him.

"Francis called up for his father and I said he went down town and will be back. Then Emily called up and said she wanted her papa, and I told her they would be back right soon, and I said if they did not come right soon, I said I would see about it. I phoned to Thiele's and told Marshall he and Frank must come, and I had no more than hung up the phone than Emily called up, and I went over and I was with them for about fifteen minutes before Marshall and Frank came back."

Marshall is the husband of the witness and Thiele operated a pool-hall. Plaintiff alleges that defendant went to shows with other women. Defendant explained this matter. We consider the matter would be very trivial but for the indifference shown by defendant to the feelings of plaintiff. His own explanation contains the following:

"I went along with them and I took care to walk with Mr. Kiser for I knew how my wife felt."

Knowing that his wife objected to his attending picture shows with other women it was his duty to either forego the pleasure of attending the shows or to have asked his wife to accompany him. Without further quoting the testimony suffice it to say that the entire record conveys the conviction that defendant was not only not considerate of his wife's feelings

but also at times unnecessarily provoking. For these reasons we think defendant is not entitled to a divorce. Defendant does not come into equity with clean hands. He is not so nearly free from fault as to justify this court to grant him a divorce.

The decree is reversed and one will be entered here dismissing both the complaint and the counter-claim. Neither party will recover costs from the other in this court.

REVERSED AND DECREE ENTERED. REHEARING DENIED.

RAND, C. J., and McBRIDE and ROSSMAN, JJ., concur.